Thank you very much for your support. My name is Steve J. King. I represent the Department of the Doctors, and I am the lead clinical assistant to Dr. Shuril Ali. And I'm the chief clinical assistant to Dr. Ali at the beginning. And in clinical management, the biggest deal between OECG and the doctors is that they really need to ensure that they're doing something right. Obviously, the OECG team is compelling to do a better job and to support the health of its new people. To begin, I'd like to say a few words about Dr. Shuril Ali. Thank you. It's certainly a hotbed. If you can take a look at the kind of research they're doing, this current research institute was founded on November 1st, 2007. OECG was a national expert consulting firm and wished to maintain the services of one of its super centers, Dr. Sanjay Bhumi. So to do that and to endorse him not to leave for other opportunities, OECG provided an awarding Dr. Bhumi from President to Director and endorsed him to stay with the contractual agreement by which, under structure, he received a $500,000 advance bonus, which was to be paid over the following five years on additional bonuses that he would earn each year personally to the realization schedule contained in the agreement. The main payment of that bonus payment and advance bonus payment was to come from his additional bonuses and the tax-free benefits that Dr. Bhumi had already paid in taxes out of the $500,000 advances. It was the structure in which Dr. Bhumi essentially would be able to repay the advance without taxes and without having to come up out of the pocket to repay that obligation. Now, this doesn't say anything in the contract. It's just saying, this is the structure. You know, that's exactly what it says in the contract. It says that he's going to be able to pay for five years so that it's an insurance-free job for five years. It's not used to guarantee his payroll contributions. Now, the fact that it's in the papers of the contract comes from his employment status and, well, when juxtaposed with an immunization schedule in which Dr. Bhumi is not to come out of the pocket in this design, she may be going to a competitor. Those are two, I think, high-end applications that are reconcilable with the concept. So, I think that it's also important that it's a security concern given his national security forces. It will, I think, serve as some closure on the end of the contract and, of course, it will. It will, indeed, as in the concept, but in this case, we are not dealing with those factors. We are dealing with a situation in which Dr. Bhumi's services were purchased for five years at every rate price and he would be paid under certain terms. It cannot reconcile what's just the annual terms with what we're looking at in terms of the immunization schedule. But, you know, he could have left Dr. Bhumi but, you know, it would be too cold to handcuff the position. You have to read these two provisions in order to understand what was going on here. You have an entity that wanted to maintain his services on a specific basis. You also had to create payment. You need only overtime to pay off any other payment. So, he just didn't want to go. There was a provision that talked about him having repayment because his repayment was in lieu. How do you reconcile those two concepts without parole elements? And that's recorded where you subject that to an incentive. He had no language and made no attempt to understand the mutual intent of the partners in order to do that. He looked at, in both cases, the timing in which the contract was entered into. He looked at it and the deal was this. LACG wants to keep its superstar and have his services for a period of time at least in order to do that. You provide $500,000 pay the taxes and tell him that over the next five years bonuses that they expect he will because remember when they called him a principal director he gave up a guaranteed bonus in exchange for his immunization scheme. So, the way to contribute and reconcile is to look at these two conflicting provisions. You need to take parole elements as well as the intention of the contract because the idea that you have five years to be paid that you have scheduled any place to be paid is inconsistent with the notion that at any time for any reason we can't discharge put it into the context of this business which is how you have to do business. The business is not keeping Dr. O'Neill from going to the hospital and having his device with a $500,000 and you are saying you owe me the bonuses we expect you to earn over that period and you can't pay me  can't keep Dr. O'Neill from going to the hospital and having his device with a $500,000 and you can't pay me because you owe me $500,000 and you can't keep Dr. O'Neill   hospital and having his device with a $500,000 and you   because you can't keep Dr. O'Neill from going to the hospital and having his device with a $500,000 and you can't keep Dr. O'Neill hospital and having his device  $500,000 and you  keep Dr.      $500,000 and you can't keep Dr. O'Neill hospital and having Dr. O'Neill doctor stay because you can't  Dr.  hospital         keep Dr. O'Neill hospital and having Dr. O'Neill doctor stay because you can't keep Dr. O'Neill hospital  O'Neill hospital and having his device but you can't come out of time to be paid in advance and be judged by the court but in Paris the court says that he gave up a guarantee to take this decision so therefore he didn't come out of time  be  in advance so   didn't come out of time to be paid in advance so therefore he didn't  so therefore he    time to be paid    advance so  he didn't come out didn't come out of  to out of time to  paid in therefore he didn't come   to time to  paid in advance so
judges: Wallace, Schroeder, Owens